UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| STEPHEN J. LOGUIDICE, | : |
| | : |
|     Plaintiff, | : |
| | : |
| v. | :  Case No. 3:11-cv-786 (VAB) |
| | : |
| CITY OF HARTFORD, et al., | : |
| | : |
|     Defendants. | : |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Stephen J. LoGuidice, brings this action against the City of Hartford and Chief Daryl K. Roberts, Detective James McGillivray, Detective Kevin Salkeld, Officer Robert Shelby, and John Doe, an unidentified police sergeant, all of the Hartford Police Department. Mr. LoGuidice alleges Defendants deprived him of his rights under the Fourth and Fourteenth Amendments in violation of 42 U.S.C. § 1983 and committed common law torts against him. Defendants have filed a Motion for Summary Judgment [Doc. No. 46] to dismiss this action in its entirety. For the following reasons, Defendants' motion is granted in part and denied in part.

**I.     FACTUAL AND PROCEDURAL BACKGROUND[1]**

On the evening of June 6, 2009, Stephen LoGuidice traveled to a concert in Hartford, Connecticut, with his friends Antonio Proto and Erin Herb. *See*, *e.g.*, Compl. ¶ 10. As they were passing through a McDonald's parking lot near the concert venue, Mr. LoGuidice and Mr. Proto began to wrestle in a playful manner. *See*, *e.g.*, LoGuidice Dep. 18:21-19:21; Herb Aff. ¶ 4-5. Two detectives with the Hartford Police Department, who were in plainclothes and an unmarked car, drove up near the two friends, who were by this point wrestling on the ground. *See*, *e.g.*,

---

[1] The factual summary is based on a review of the pleadings, the Local Rule 56 Statements, and exhibits accompanying the filings of the parties.

LoGuidice Dep. 20:3-5; LoGuidice Aff. ¶¶ 6-7; Herb Aff. ¶ 7-8; Rule 56(a) Statement ¶ 25. Detective McGillivray called out from the car to the two friends, but Mr. LoGuidice did not hear what was said. *See*, *e.g.*, LoGuidice Dep. 20:5-7; LoGuidice Aff. ¶ 9. Mr. LoGuidice approached the car and asked what Detective McGillivray had said. *See*, *e.g.*, Rule 56(a) Statement ¶¶ 32-33; Herb Aff. ¶ 11. Detective McGillivray opened the car door. According to Plaintiff's account of events, Detective McGillivray opened the door forcefully into him, knocking him onto the ground (*see*, *e.g.*, LoGuidice Aff. ¶ 12; Herb Aff. ¶ 13), while Defendants assert that Mr. LoGuidice, agitated and threatening, approached the vehicle and pushed the door forcefully into Detective McGillivray as the police officer attempted to exit the car (*see*, *e.g.*, Wiebusch Aff. Exh. A-3, at 4; Salkeld Dep. 30:11-13, 31:7-32:2).

It is undisputed that Detective McGillivray hit Mr. LoGuidice in the head with his handheld police radio. *See*, *e.g.*, Def. Br. at 3. Plaintiff claims Detective McGillivray struck Mr. LoGuidice in the head between three and six times with the radio, and that Mr. LoGuidice lost consciousness as a result and awoke in handcuffs and drenched in blood. *See*, *e.g.*, LoGuidice Dep. 25:19-26:5, 26:23-25. He was transported by ambulance to a hospital, where he was treated for lacerations. *See*, *e.g.*, LoGuidice Dep. 28:21-25; LoGuidice Aff. ¶ 18. After this incident, Mr. LoGuidice claims to have suffered several months of insomnia and to suffer from fear and anxiety of police to this day. *See*, *e.g.*, LoGuidice Aff. ¶ 19.

Mr. LoGuidice commenced this suit in Connecticut state court in April 2011, seeking damages allegedly resulting from this incident from the City of Hartford, Hartford Police Chief Daryl K. Roberts, Hartford Police Detectives James McGillivray and Kevin Salkeld, and Hartford Police Officer Robert A. Shelby, Jr., as well as an unidentified Hartford Police sergeant. On May 12, 2011, Defendants removed the case to this Court. The Complaint contains eight counts: use of excessive force against Detectives McGillivray and Salkeld, Officer Shelby, and

Sergeant Doe, under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution; unreasonable arrest against McGillivray and Salkeld, under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution; assault and battery against McGillivray; false arrest against McGillivray, intentional infliction of emotional distress against McGillivray; negligent infliction of emotional distress against McGillivray, negligence against McGillivray, Salkeld, Shelby, and Doe; and deliberate indifference against the City of Hartford and Chief Roberts under 42 U.S.C. § 1983. On May 16, 2014, Defendants moved for summary judgment on all counts under Federal Rule of Civil Procedure 56.

## II.   DISCUSSION

### A.   Standard for Summary Judgment

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 172 (2d Cir. 2005). When ruling on a motion for summary judgment, the court may not try issues of fact, but must leave those issues to the jury. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined . . . to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

"[T]he moving party bears the burden of showing that he or she is entitled to summary judgment." *United Transp. Union v. Nat'l R.R. Passenger Corp.*, 588 F.3d 805, 809 (2d Cir. 2009). Once the moving party has satisfied that burden, in order to defeat the motion, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a

3

genuine issue for trial.'" *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact.

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." Id. Only those facts that must be decided in order to resolve a claim or defense will prevent summary judgment from being granted. Immaterial or minor facts will not prevent summary judgment. *See Howard v. Gleason Corp.*, 901 F .2d 1154, 1159 (2d Cir. 1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in its favor." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000). However, the inferences drawn in favor of the nonmovant must be supported by evidence. "[M]ere speculation and conjecture" is insufficient to defeat a motion for summary judgment, *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 315 (2d Cir. 1997), as is the "mere existence of a scintilla of evidence in support of the [nonmovant's] position," *Anderson*, 477 U.S. at 252.

**B.     Claims Against Chief Roberts, Officer Shelby, and Unidentified Officer**

Defendants move for summary judgment on the claims against Chief Daryl K. Roberts, Officer Robert A. Shelby, and an unidentified officer of the Hartford Police Department, and Mr. LoGuidice does not contest any of Defendants' arguments on these claims. In fact, Mr. LoGuidice explicitly concedes that his failure to intervene claims against Officers Shelby and Doe would fail. Therefore, all claims against Chief Roberts, Officer Shelby, and Officer Doe

4

shall be dismissed. *See DeMoss v. Norwalk Bd. of Ed.*, 21 F. Supp. 3d 154, 172 (D. Conn. 2014) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.") (internal quotation marks omitted).

### C. Claims For Unreasonable and False Arrest

Mr. LoGuidice also does not contest summary judgment on his claims for unreasonable arrest under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments and for false arrest under Connecticut state law. Mr. LoGuidice instead explicitly concedes that his claim for false arrest would fail, and he further states that he does not object to summary judgment on Count Four. Therefore, Counts Two and Four of his Complaint, which assert these claims, shall also be dismissed.

### D. Count One: Excessive Force Claims Against McGillivray and Salkeld

Mr. LoGuidice alleges that, in violation of his Fourth Amendment rights, Detective McGillivray used an unreasonable and excessive amount of force in arresting him on June 6, 2009, and Detective Salkeld failed to intervene in this use of excessive force. Defendants move for summary judgment on this count on the grounds of qualified immunity. The Court denies summary judgment on these grounds.

#### 1. Standard for Qualified Immunity

Federal law provides a private right of action for money damages from government officials who, acting "under color" of law, have violated an individual's constitutional or statutory rights. 42 U.S.C. § 1983. However, "to ensure that fear of liability will not unduly inhibit officials in the discharge of their duties, the officials may claim qualified immunity[.]" *Camreta v. Greene*, 131 S. Ct. 2020, 2030 (2011) (internal quotation marks and citation omitted). Qualified immunity shields government officials from liability for civil damages "insofar as their

5

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

"Even where the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995). In short, "if any reasonable trier of fact could find that the defendants' actions were objectively unreasonable, then the defendants are not entitled to summary judgment," whereas "if the court determines that the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendants' conduct under the circumstances, summary judgment for the officers is appropriate." *Id.* at 420-21. Furthermore, "[i]f there is no dispute about the material facts, the district court should assess the reasonableness of the defendants' conduct under the circumstances presented in order to determine on summary judgment whether the defendants are entitled to qualified immunity." *Id.* at 421. However, "summary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness." *Kerman v. City of New York*, 261 F.3d 229, 240 (2d Cir. 2001) (internal quotation marks and citation omitted).

### 2. Excessive Force Claim Against McGillivray

There is no question that the right at issue in this case—to be free from excessive force— was clearly established at the time of the incident, and therefore this Court must move directly to the "objective reasonableness" inquiry. *Lennon*, 66 F.3d at 423. In determining whether a use of force was excessive under the Fourth Amendment, a court must "ask 'whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation[,]'" considering, *e.g.*, "'the severity of the

6

crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Terebesi v. Torreso*, 764 F.3d 217, 231 (2d Cir. 2014) (quoting *Graham v. Connor*, 490 U.S. 386, 396, 397 (1989)).

The contrasting accounts of both Mr. LoGuidice's and Detective McGillivray's conduct leading up to the handcuffing present factual issues on the reasonableness of the degree of force employed. For example, Mr. LoGuidice and Ms. Herb testified that Detective McGillivray and Detective Salkeld did not identify themselves as police officers, but Detective Salkeld testified that Detective McGillivray clearly identified themselves. *Compare* LoGuidice Aff. ¶ 8 *and* Herb Aff. ¶ 9 *with* Salkeld Dep. 29:20-30:5. There also are differences in the parties' respective accounts of the altercation between Detective McGillivray and Mr. LoGuidice. Mr. LoGuidice and Ms. Herb testified that Detective McGillivray flung his car door open without provocation, knocking over Mr. LoGuidice, who was a foot or two away from the officers' car at the time, and then, standing straddled over Mr. LoGuidice, "violently beat" Mr. LoGuidice with his walkie talkie until Mr. LoGuidice lost consciousness. LoGuidice Dep. 23:23-26:15; *see also* Herb Aff. ¶¶ 12-19.

Detective Salkeld, on the other hand, testified that Detective McGillivray opened his car door before Mr. LoGuidice reached the car, and that Mr. LoGuidice began struggling with Detective McGillivray as soon as Detective McGillivray's feet were out of the vehicle, with Mr. LoGuidice pushing Detective McGillivray back into the car with the car door and pinning him there. Salkeld Dep. 31:7-32:2. Detective Salkeld further testified that Detective McGillivray "cleared himself of the door," that Detective McGillivray attempted to wrestle Mr. LoGuidice to the ground, that Detective McGillivray and Mr. LoGuidice "were swinging at each other," that Detective McGillivray ended up striking Mr. LoGuidice in the head at least once with his radio,

and that eventually the two officers were able to restrain and handcuff Mr. LoGuidice. Salkeld Dep. 32:5-34:21.

These and other differences in the parties' accounts touch upon all three of the considerations suggested by *Graham*: the severity of the crime at issue, whether Mr. LoGuidice posed an immediate threat to the safety of the officers or others, and whether he was actively resisting arrest. Where "the parties' versions of the facts differ markedly," summary judgment is inappropriate on qualified immunity grounds. *Kerman*, 261 F.3d at 240. Therefore, the Court denies summary judgment with respect to the Section 1983 excessive force claim against Detective McGillivray.

### 3. Failure to Intervene Claim Against Salkeld

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence," and a police officer is liable for failing to intercede when excessive force is being used when there was "a realistic opportunity to intervene to prevent the harm from occurring." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). Defendants assert that Detective Salkeld had no such opportunity because, even though it is undisputed that he observed Detective McGillivray strike Mr. LoGuidice with a police radio, Detective Salkeld estimated that the altercation took less than one minute, which was not enough time for him to get out of the car and take any action to prevent the alleged violation of Mr. Logudice's rights. Def. Br. at 12-13.

"Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Branen*, 17 F.3d at 557. Furthermore, intervention need not be physical. *See*, *e.g.*, *Durham v. Nu'Man*, 97 F.3d 862, 868

(6th Cir. 1996) ("Coming to [plaintiff's] aid would not have required [defendant] to become physically involved in the incident."); *Morales v. Town of Glastonbury*, No. 3:09-cv-713, 2012 WL 124582, at *5, 2012 U.S. Dist. LEXIS 4796, at *17 (D. Conn. Jan. 17, 2012) (where "time elapsed between the first and second strikes" by fellow police officers, defendant officers had potential "opportunity to intervene, at least verbally"). The Court cannot find as a matter of law that Detective Salkeld had no opportunity to intervene in the use of force against Mr. LoGuidice, viewing the facts of this case in the light most favorable to Plaintiff. Therefore, summary judgment as to the Section 1983 claim against Detective Salkeld is denied.

### E. Count Three: Assault and Battery Claim Against McGillivray

"To establish a claim for assault and battery, plaintiff must prove that defendants applied force or violence to him and that the application of force or violence was unlawful." *Ochoa v. City of W. Haven*, No. 3:08-cv-00024, 2011 WL 3267705, at *10, 2011 U.S. Dist. LEXIS 83087, at *30 (D. Conn. July 29, 2011) (internal quotation marks and citations omitted). Defendants argue that, because the amount of force used in this case was objectively reasonable, and therefore lawful, the assault and battery claims necessarily fail. *See* Def. Br. at 32. Because the Court has concluded that there are genuine material factual disputes regarding whether Detective McGillivray used excessive force in effectuating Mr. LoGuidice's arrest, Defendants' motion for summary judgment is also denied as to the claims of assault and battery. *See Orell v. Muckle*, No. 3:11-cv-00097, 2012 WL 3231017, at *6, 2012 U.S. Dist. LEXIS 115077, at *16 (D. Conn. Aug. 6, 2012) (denying summary judgment on assault and battery claims on the basis of unresolved factual disputes regarding excessive force claim).

### F. Count Five: Intentional Infliction of Emotional Distress Claim Against McGillivray

Under Connecticut law, four elements must be established to prevail under a claim for intentional infliction of emotional distress: "(1) that the actor intended to inflict emotional

distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Appleton v. Bd. of Educ. of Town of Stonington*, 254 Conn. 205, 210 (Conn. 2000) (internal quotation marks and citation omitted). "Courts have held that the use of excessive force can establish a claim for intentional infliction of emotional distress." *Frappier v. City of Waterbury*, No. 3:07-cv-1457, 2008 WL 4980362, at *3, 2008 U.S. Dist. LEXIS 94550, at *8 (D. Conn. Nov. 20, 2008).

Defendants argue that summary judgment is warranted on Mr. LoGuidice's claim for intentional infliction of emotional distress (1) because "Detective McGillivray did not engage in excessive force" and (2) because Mr. LoGuidice's emotional distress was, as a matter of law, not severe. Def. Br. at 34-35. Both arguments fall short because the Court has found that material issues of fact exist regarding Mr. LoGuidice's underlying claim of excessive force. *See Zadrowski v. Town of Plainville*, No. 3:09-cv-1367, 2013 WL 5435491, at *13, 2013 U.S. Dist. LEXIS 140396, at *40 (D. Conn. Sept. 30, 2013) (rejecting defendants' argument that plaintiff's emotional distress was not severe and that summary judgment therefore should be granted because "summary judgment on a claim for intentional infliction of emotional distress is often inappropriate when there is an associated excessive force claim with disputed issues of fact" and even in the absence of medical evidence, plaintiff need only "present[] significant, non-conclusory statements supporting a finding of 'severe' emotional distress" to survive summary judgment). Moreover, Mr. LoGuidice has testified to having suffered fear and anxiety as a result of this incident. Thus, summary judgment on Mr. LoGuidice's claim of intentional infliction of emotional distress is denied.

### G. Count Six: Negligent Infliction of Emotional Distress Claim Against McGillivray

To prevail on a claim for negligent infliction of emotional distress, a plaintiff must show that a "defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm." *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 446 (2003) (internal quotation marks and citation omitted). Courts in this district have determined that use of excessive force "also can state a claim for negligent infliction of emotional distress." *Ochoa*, 2011 WL 3267705, at *11, 2011 U.S. Dist. LEXIS 83087, at *30 (D. Conn. July 29, 2011) (internal quotation marks and citation omitted).

However, Defendants argue that Detective McGillivray has governmental immunity from liability for negligent infliction of emotional distress. Under Connecticut law, municipal employees generally have qualified immunity in the performance of discretionary governmental acts. *See Mulligan v. Rioux*, 229 Conn. 716, 727-28 (Conn. 1994). There are three exceptions to this discretionary act immunity: (1) when the alleged conduct involves malice, wantonness, or intent to injure; (2) when a statute provides for a cause of action against a municipality or municipal official for failure to enforce certain laws; and (3) when the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm. *Doe v. Petersen*, 279 Conn. 607, 615-16 (Conn. 2006).

This final exception to discretionary act immunity applies here. "Connecticut courts have held that where, as here, an officer is alleged to have used excessive force against a person, he may be found to have subjected an identifiable person to imminent harm and therefore is not protected from suit by the doctrine of governmental immunity." *Odom v. Matteo*, 772 F. Supp. 2d 377, 395 (D. Conn. 2011) (collecting cases). Therefore, summary judgment is denied with respect to Mr. LoGuidice's negligent infliction of emotional distress claim.

### H. Count Seven: Negligence Claim Against McGillivray and Salkeld

Mr. LoGuidice asserts a claim for negligence against Detective McGillivray for his alleged failure to exercise reasonable care in his use of force against Mr. LoGuidice and a claim for negligence against Detective Salkeld for his failure to intervene. Defendants argue that they are protected by governmental immunity for their discretionary acts comprising the bases for these claims. However, as discussed *supra* Section II.F., negligence-based claims against Detective McGillivray for his alleged use of excessive force fall into one of the exceptions for discretionary act immunity under Connecticut law. For similar reasons, the claim for negligence against Detective Salkeld falls into the same exception. Mr. LoGuidice was an identifiable person subjected to imminent harm by Detective Salkeld's failure to act. *See*, *e.g.*, *Morales*, 2012 WL 124582, at *10, 2012 U.S. Dist. LEXIS 4796, at *30 (D. Conn. Jan. 17, 2012); *Carey v. Maloney*, 480 F. Supp. 2d 548, 560 (D. Conn. 2007). Therefore, the negligence claims against both officers shall proceed.

### I. Count Eight: *Monell* Claim Against City of Hartford

A municipality is only subject to liability under § 1983 when the violation of the plaintiff's federally protected right is attributable to the enforcement or execution of a municipal policy, practice, or custom. *See Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978). "The policy or custom need not be memorialized in a specific rule or regulation." *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir.1996). Instead, "a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (internal quotation marks and citation omitted). Furthermore, "plaintiffs must show that the official policy, practice or custom was the 'moving force [behind] the constitutional violation,' [] which is to say that it actually

caused the constitutional deprivation." *Hernandez v. Connecticut Court Support Servs. Div.*, 726 F. Supp. 2d 153, 156-57 (D. Conn. 2009) (internal citations omitted). Mr. LoGuidice cannot meet that burden here and his *Monell* claim must be dismissed.

Mr. LoGuidice argues that the City's allegedly deliberately indifferent failure to train, supervise, screen, discipline, transfer, counsel, and/or otherwise control its police officers provide the basis for municipal liability in this case. However, Mr. LoGuidice has provided no evidence to support these conclusory allegations. He can point to nothing in the record that concerns the training, supervision, screening, discipline, transfer, counsel, or control of the City's police officers. Instead, he argues that the assault itself provides sufficient basis for a reasonable jury to infer that there was inadequate screening, training, and hiring.

For a finding of municipal liability under a theory of inadequate training, plaintiffs must "establish not only that the officials' purported failure to train occurred under circumstances that could constitute deliberate indifference, but also that plaintiffs identify a specific deficiency in the city's training program and establish that that deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation," *i.e.*, "that 'the officer's shortcomings . . . resulted from . . . a faulty training program' rather than from the negligent administration of a sound program or other unrelated circumstances." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 129-30 (2d Cir. 2004) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390-91 (1989)). While a plaintiff "need only plead that the city's failure to train caused the constitutional violation" at the motion to dismiss stage, at the summary judgment stage, "[a]fter discovery, . . . a plaintiff is expected to proffer evidence from which a reasonable factfinder could conclude that the training program was actually inadequate, and that the inadequacy was closely related to the violation." *Id.* at 130 n.10. Mr. LoGuidice has not even attempted to do so, in spite of having had nearly three years in which to conduct discovery.

13

Similarly, while Mr. LoGuidice argues that an official policy can be inferred from the omissions of a municipality's supervisory officials, *see* Def. Br. at 17, he points to no omissions by any supervisory officials in this case from which such a policy of deliberate indifference can be inferred. Just as there is no evidence that the City failed to provide adequate training to its officers, there is no evidence in the record of a failure by the City to supervise or screen its officers.

Because of the complete absence of relevant evidence regarding *Monell* liability, summary judgment is granted on Count Eight of the Complaint.

### J. Count Nine: Indemnification and Municipal Liability Claims Against City of Hartford

#### 1. Indemnification

"Connecticut General Statute Section 7-465 allows a plaintiff to seek indemnity from a municipality based upon the actions of a municipal employee within the scope of his municipal employment," *Jones v. City of Hartford*, 285 F. Supp. 2d 174, 190 (D. Conn. 2003), so long as "the injury 'was not the result of any wilful or wanton act,'" *Carey*, 480 F. Supp. 2d at 567 (quoting Conn. Gen. Stat. § 7-465). The City does not assert that the statute does not apply to this case. Because summary judgment has been denied as to allegations for which the City would be required to indemnify its employees, summary judgment is denied as to Mr. LoGuidice's claim for indemnification.

#### 2. Municipal Liability

"Connecticut General Statute section 52-557n(a)(1) provides in part that, '[e]xcept as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official

duties . . . .'"  *Morales*, 2012 WL 124582, at *11, 2012 U.S. Dist. LEXIS 4796, at *37 (D. Conn. Jan. 17, 2012) (quoting Conn. Gen. Stat. § 52-557n).  And while the statute extends "the same discretionary act immunity that applies to municipal officials to the municipalities themselves," *Violano v. Fernandez*, 280 Conn. 310, 320 (Conn. 2006), "the Connecticut Supreme Court continues to apply the common law exemptions to governmental immunity set forth above," *Carey*, 480 F. Supp. 2d 548, 566-67 (D. Conn. 2007) (citing *Petersen*, 279 Conn. at 614).  As described *supra*, Mr. LoGuidice's claims include allegations of negligence as to which governmental immunity does not apply.  Thus, summary judgment is denied as to his claim for municipal liability under Conn. Gen. Stat. § 52-557n.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED** in part and **DENIED** in part.

The Court **GRANTS** summary judgment in favor of Chief Daryl K. Roberts, Officer Robert A. Shelby, and unidentified Officer John Doe on all claims against them in the complaint. All claims against the Chief Roberts, Officer Shelby, and Officer Doe are hereby **DISMISSED**. ***The Clerk is directed to terminate Daryl K. Roberts, Robert A. Shelby, and John Doe from this case.***

With regard to the remaining defendants, the Court **GRANTS** summary judgment in favor of the City of Hartford on Count Eight, and **DENIES** summary judgment, and the requests for qualified immunity and governmental immunity, on all remaining claims against the City of Hartford, Detective James McGillivray, and Detective Kevin Salkeld.

**SO ORDERED** this 7th day of July, 2015, at Bridgeport, Connecticut.

    /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE